Curia, per

Butler, J.
The doctrine of the cases of Hart and Edwards, 2 Bail. 306, and Williams and Vance, Dud. 97, cannot be too strongly inculcated by this court — where a purchaser has an. opportunity to form his own judgment he should avail himself of it, and should not be permitted to resort to the implication of law for a warranty, when the vendor has actually refused to give one ; or, which amounts to the same thing, has given explicit notice that the purchaser must rely on his own vigilance and prudence in making his bargain. In the first of the cases referred to, it was held that when a slave is sold with notice that he is diseased, however slightly, and dies shortly after of that disease, the purchaser,- without an express warranty of soundness, is not entitled to rescind the contract, on the ground that the- full extent of the disease was not disclosed at the time of the sale. And in the-second case the purchaser was told that the slave had been exposed to a liability to take the measeis, of which he subsequently died. This was held to. be sufficient information to put the purchaser on his guard, and to require him to take care of his own interest. So far from his being allowed to rescind the contract on account of the loss of the negro by death, this court, after a verdict in his favour, sent the case back, with strong instructions that the pur *72 chaser, under the doctrine of caveat emptor, must abide by the terms of his own contract.
I think the case which we are now considering is stronger against the purchaser, who is the plaintiff in the’ action, than either of the above cases.
The defendant, Mr. Gist, having the negroes for sale, did not disguise the fact that he wished to sell them because they had an objectionable habit, that of eating dirt, and which, in his opinion, rendered them unprofitable as breeding women. There was no .question at all but that the plaintiff was fully apprized of this fact; nor was it pretended, on the trial, that defendant had directly or indirectly agreed to warrant any thing but the title of the ne-groes. On the contrary, his refusal to do so was explicit and repeated. The bill of sale contains only a warranty of title, which of itself is always strong evidence that a warranty of every thing else is excluded.
It is but an implication of law that a full price raises a warranty of the soundness of the commodity. This implication is strongly rebutted when nothing but title is warranted in the terms of the contract; and I think the court went very far when it decided, that notwithstanding this apparent negation of warranty, it could be implied, because it was not in the terms of the contract excluded. This seems to me to be widening the implication of law to embrace what the parties had not thought necessary to express in their contract, but which, inferably, was excluded from it. The decisions of the court have gone far enough, and must not be extended so far as to afford relief from loss, where there has been, as in this case, a positive refusal to warrant.
It is said that although the defendant refused to give a warranty, he did not act in good faith in his communication to the plaintiff, but that in fact, and probably from design, he gave false information, and such as was calculated to deceive the purchaser. There are cases in which it seems to be held, that when nothing has been said about a warranty, or where there has been an apparent refusal to warrant, coupled with the declaration that nothing more is the matter with a slave than that which is mentioned at *73 the time, while something else is the matter, entirely of a different kind from that which was mentioned, the purchaser would be entitled to relief for a loss arising from a disease unknown to either party. This proceeds on the ground, that a refusal to warrant only extends to the particular subject referred to, and not to such diseases as were not in the contemplation of either party. In such case the purchaser had no opportunity to consult his judgment, but decided in reference to one matter, whilst another was out of the scope of his inquiries. In such cases as these, there has been rather an acquiescence in the verdicts of juries.than any authoritative decision of the Court of Appeals.
But even these precedents cannot avail the plaintiff. The negroes that he bought died of a disease growing out of the habit which he was explicitly informed of. He had an opportunity to exercise his own judgment, or to avail himself of that of others. The viligance of a prudent man was allowed to be overcome by false notions of speculative gain.
The fact that the negroes were liable to disease from their habit of eating dirt, was not of itself in his estimation an objection to the purchase. The purchaser looked for his indemnity in the profits of a resale. If the vendor had said in one breath, I will not warrant, and in the next had said, I will, then the last declaration would have been obligatory on him; and, perhaps, if'after insertingin the bill of sale the fact that he sold the negroes as dirt eaters, he had struck it out of his own accord, an inference might possibly have been drawn, that he had, thereby, withdrawn his refusal to warrant. But when it is ascertained that it was struck out at the instance of the purchaser, upon the ground that it might injure the sale of the negroes, no such inference can be drawn. - The contract is then left to rest on its original footing, which was, that the vendor undertook to sell without a warranty.
■ In an action on' this contract the plaintiff alleges that the law implies a warranty of soundness, notwithstanding this disclaimer to warrant. This action cannot be maintained, unless the terms of the contract have been violated. *74 And how can this be said, where it is proved that, by the terms of the contract, there should be no warranty of soundness ? I a.m inclined to the opinion, that in no case should such an action be maintained when there is a general refusal to warrant, notwithstanding the party may limit his information to particular defects which do not in fact constitute the real source of unsoundness. For by saying that he knows of one disease only, it should not be concluded that his refusal to warrant against it is all that he intends when he says that he will give no warranty of soundness at all; such general refusal, without fraud, should exempt him from liability altogether on the contract. This has nothing to do with the remedy by an action for deceit, in which fraud is the gist of the action. In such an action the vendor cannot escape from liability, under the pretext of refusing to warrant, on account of one defect, which he communicates, when in fact he knows of others of a more objectionable kind, which he fraudulently conceals ; wilful suppression of truth, or false representation, should afford no security to a fraudulent vendor against the claim of an innocent purchaser.
The purchaser, in the case under consideration, bought with his eyes open, and with avowed willingness to run all the risks of-his bargain. His loss must be regarded as his misfortune •; and not so much imputable to the fault of the defendant as to his own imprudence. He has paid a fijll price for property which turned out to be entirely worthless. This is a consideration which may address itself to the generosity of the opposite party, but cannot affect the legal justice of the parties, nor should it be per* mitted to influence the judgement of those who have been invested with authority to pass upon their rights. The scales of justice should preponderate by the weights that are in them, and not by the sympathy of the magistrate that holds the balance. Juries that are invested with authority to pass upon the legál rights of parties must lift themselves, for the time, above the level of an irresponsible multitude, and feel that individual sympathy should not overcome the grave prescriptions of the law. They are jrot arbitrators, or law giyers; to be regulated by their die* *75 cretion,- or by notions of expediency which may obtain in one district, whilst they would be repudiated in every other part of the State ; but they are- Judges called on to give utterance to the voice of the law. In performing this office, they should not be permitted to take refuge in a vague public opinion deciding against an unpopular suitor, or for sustaining a claim founded in a generous sympathy for one who has made an unfortunate bargain. The verdict of the jury in this case was wholly unexpected; and was not only found in a disregard of the instruction of the presiding Judge, but in violation of the common principles of law ■ as recognized in the ordinary business of life ; evincing a facility, which' temporary circumstances might excuse, but which . can find no justification in the impartial rules of regulated justice. In granting a new trial, we do so in the belief that the law will ultimately prevail. We are further of opinion, in any point of view that can be taken of the case, as it has been presented, that the physician’s charges should not have been allowed, as there had been no tender of the negro back.
Motion granted.
Richardson, O’Neall and Evans, JJ. concurred.